KING et al. v. GLENS FALLS INDEMNITY CO.

No. 10052.

Circuit Court of Appeals, Fifth Circuit.

Jan. 13, 1942.

Rehearing Denied Feb. 2, 1942.

Lucian Touchstone, of Dallas, Tex., for appellants.

M. S. McCorquodale, of Houston, Tex., for appellee.

Before HUTCHESON and HOLMES, Circuit Judges, and DAWKINS, District Judge.

DAWKINS, District Judge.

Plaintiffs' suit is against the insurer of Southern Steamship Company (hereafter called the Ship Company) under the Workmen's Compensation laws of the State of Texas, Vernon's Ann.Civ.St. art. 8306 et seq., for the death of their husband and father, Gordon R. King. The Industrial Accident Board of that State had previously rejected their claim on findings of fact and law that the deceased was not, at his death, performing services within the scope of his employment. Jurisdiction was upon diverse citizenship. The jury's verdict was for the plaintiffs, but upon a motion for judgment non obstante veredicto, it was set aside and a decree was entered for the defendant according to Subsection (b) of Rule 50 of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c. The court's ruling was likewise based upon the conclusion that death did not result from anything "having to do with and originat-

ing in the * * * business * * * of the employer", within the meaning of Article 8309, Section 1, of Vernon's Texas Statutes.

The facts are not seriously disputed. The parties stipulated: jurisdiction, capacity and relationship of the plaintiffs to the deceased; deceased was an employee of the Ship Company, whose regular duties were those of a soliciting freight agent; at the death of King, defendant was the insurer under the Texas Compensation law; that King was accidentally drowned on May 30, 1934; that shortly prior thereto, because of a strike on the docks, he had been duly assigned to and was performing the duties of a bodyguard to H. T. Lindsey, Manager of the Ship Company at Houston, Texas; that the Ship Company had actual notice of the death about the time it occurred; that this suit was timely entered after the adverse ruling of the Industrial Accident Board; that the deceased had worked for his employer substantially the whole of the year preceding his death; and that the rate of compensation, if due, was $20 per week.

The facts otherwise, in substance, are as follows: In discharging his duties of bodyguard for Lindsey, King lived in the former's home and remained with him day and night. On the day of his death, one J. M. English, using his own car, drove Lindsey, the latter's wife and the deceased to Seabrook, Texas, about twenty miles from Houston. There they met unexpectedly C. H. McNair, Assistant Traffic Manager of the Humble Oil Company, and his daughter. McNair had authority to negotiate with carriers, such as the Ship Company, for transportation services for his company and had actually shipped much business through arrangements made with Lindsey. Lindsey invited McNair and his daughter to join the party. Deceased had known McNair for some twelve years and on the day in question, before leaving the pier, had actually solicited business from him. In arranging the fishing trip, it was found that all could not go in the available boat. Lindsey arranged and directed that McNair, his daughter, the deceased and English go for a fishing trip out into the bay in the boat of the latter. They proceeded some two miles to Tin Can Reef, where they fished for about forty-five minutes when bad weather set in and they started on the return trip. The water became rough between five and six o'clock p. m., and King fell or was thrown overboard and drowned.

Three questions are raised on the appeal, first whether the plaintiffs delayed unduly in bringing their suit; second, whether this suit should have been brought in admiralty; and third was the deceased in the course of his employment when he met his death.

1. The testimony of the plaintiff, Mrs. King, is undisputed that some time after the accident occurred, she inquired of Lindsey if the Ship Company carried Workmen's Compensation insurance, and was informed that it did not; further that she believed this statement and discovered it was untrue only a short time before her claim was filed with the Board. It was for the jury to decide if the plaintiff was misled by the general manager of the Ship Company into believing that no insurance was carried, and whether under all the circumstances, this was a reasonable excuse for not making claim earlier. Appellees put little stress upon this point, and neither the Board nor the lower court noticed it in their rulings. Our conclusion is that the verdict of the jury upon this point foreclosed any review by the court of whether the failure to make the claim within the six months provided by the statute was justified.

2. As to the contention that the suit should have been brought in admiralty, it is sufficient to say that King worked as a soliciting freight agent, which had nothing to do with navigation, and this was also true of his duties as a bodyguard for Lindsey. He was not required to perform any labor upon or in the operation of vessels in navigable waters in the usual performance of his duties. His presence upon the boat was purely incidental and at the instance of Lindsey for the entertaining of a valuable customer. In these circumstances, he was entitled to the rights and remedies afforded by the State Workmen's Compensation law. Brown v. Aetna & Surety Casualty Company, 135 Tex. 583, 145 S.W.2d 171; 25 A.L.R. 1035, and authorities therein cited.

3. Coming now to the issue of whether the deceased was in the course of his employment and performing services incident thereto at the time of his death, there can be little doubt but that from the beginning of his duties as bodyguard, King was required to be in position at all times to render aid or assistance to Lindsey if necessary. He had no fixed hours. For this reason, as above stated, he lived in the Lindsey home and accompanied the latter

wherever he went. The trip to Seabrook was made at Lindsey's instance, but whether it was or not, so long as King remained in the presence of or close enough to render physical aid, it seems to be conceded that he was in the course of his employment, whether Lindsey was actually performing any duties as General Manager of the Ship Company or not. The contention is simply that when death came, King had departed from his duties as bodyguard and soliciting freight agent and was pursuing his own personal pleasure of fishing.

English operated a truck freight line, which did business with the Ship Company, and had hauled workers to the dock during the strike. His car was used to drive Lindsey, the latter's wife and King to Seabrook, where they met McNair and his daughter. While this meeting with the customer, McNair, was not pre-arranged, Lindsey invited him to join the party. For entertainment, a fishing trip was decided upon, but it was found that the boat which also belonged to English, would not accommodate them all. Lindsey then arranged and directed that King go with McNair, his daughter and English fishing while the rest of the party in small boats went crabbing. Had the boat been large enough, it seems certain that Lindsey would have gone on the fishing trip also, in which event, we think it scarcely could have been said that King was not in the course of his employment when thus accompanying Lindsey. It appears reasonably clear that on meeting McNair, Lindsey felt that he should be entertained, and having authority to do so, King was detailed to that duty. The deceased was out of the presence of Lindsey only a short while, probably not more than two hours and at the farthest, not more than two miles away. He did not cease to be within the protection of his employment by absenting himself for a short time and distance from his superior, when it was done at the direction of the latter. King's services were at the command of Lindsey all hours of the day and night. Because of his duties as bodyguard, he was upon the scene and was sent on the trip in which he lost his life.

For the purpose of illustrating the view that it was not necessary for King to be in the physical presence of Lindsey at all times or that his status did not change thereby, it might be supposed that Lindsey for some reason had gone to some other place a mile or so away and left King at the home. If during this absence, the latter had been attacked and injured or killed by some of the strikers or their adherents thinking it necessary to get to Lindsey, could it be said that King was not in the course of his employment because of Lindsey's absence? We think not. He would have been discharging the duty for which he was employed. We think the appellants were entitled to recover. Commercial Casualty Co. v. Strawn, Tex.Civ.App., 44 S.W.2d 805; Southern Surety Co. v. Shook, Tex. Civ.App., 44 S.W.2d 425; Constitution Indemnity Co. v. Shytles, 5 Cir., 47 F.2d 441.

The judgment appealed from is reversed and the verdict of the jury is reinstated.

HUTCHESON, Circuit Judge, dissenting.

Because of the very long delay, five years, during which Lindsey has died, so that defendant is deprived of his testimony, and of the fact that plaintiff, for a long time before she filed her claim, had had dealings as an employee of the Workman's Compensation Department of the Maryland Casualty Company with the Industrial Accident Board by inquiry of whom she says she discovered that she had a claim, I have had some difficulty in agreeing that good cause was shown. Lindsey's statement, as she testifies to it, was however positive that the company had no insurance, there are authorities[1] tending to go in the direction, though not anywhere near so far as, the court has gone here, and if a case on the merits was made out I should not dissent but go along with the majority.

I am compelled to dissent however, because it seems quite clear that King's death did not result from anything "having to do with and originating in the business of the employer", but happened many miles away from, and wholly distinct and apart from the business of his employer, as the result of dangers incident to a fishing trip undertaken by him and Lindsey, on a holiday. If I could agree with the majority that the trip to Seabrook for an outing, had anything to do with, or even remotely originated, in the business of the Southern Steamship Company, I would readily agree that the mere fact that the party divided in separate boats and that King was not in the boat with Lindsey when the accident which caused his death occurred, would be without effect to deprive him of compensation

---

[1] New Amsterdam Casualty Co. v. Chamness, Tex.Civ.App., 63 S.W.2d 1058.

otherwise due him. The statement in the majority opinion, that "so long as King remained in the presence of and close enough to render physical aid, it seems to be conceded that [King] was in the course of his employment * * * The contention is simply that when death came, King had departed from his duties as bodyguard and soliciting freight agent and was pursuing his own personal pleasure of fishing", is an entirely mistaken one. It proceeds, I think, from a complete misapprehension of the real difficulty in the way of King's recovery. That difficulty lies far back of the dispersion of the party in separate boats. It inheres in the very nature of the pleasurable holiday activities upon which English, Lindsey, his wife and King, had embarked. In such activities, Lindsey was not engaged in the business of his company and was not covered, and neither was King. The fact that King, soliciting freight agent for the Southern Steamship Company, was, as the record shows, acting in Houston also as bodyguard to Lindsey, has I think, been permitted to bulk so largely in the case as to obscure the dominant fact; that Lindsey was covered, under the statute, only when he was engaged in the regular course of his occupation, as manager, and with respect to matters having to do with and originating in the business of his employer; that Lindsey was at the time of King's death, doing nothing having to do with or originating in the business of the Southern Steamship Company, but was on a pleasure trip entirely disassociated with it, and King, a member of the same pleasure party, was also necessarily not engaged in anything having to do with or originating in the business of the employer. Nothing in the record in the slightest sustains or purports to sustain the view that the company had assigned King as a personal attendant on Lindsey when, on pleasure bent, Lindsey turned aside from the business of the company, left Houston, and at his own expense and not the company's set out upon a frolic of his own.

If the injury had resulted from an attack on Lindsey or on King, as a result of the strike, I should say that it had to do with and originated in the business of the employer and that the question of where such an attack occurred, was immaterial. When, on the contrary, it appears as here, that the injury had nothing whatever to do with

apprehension of or attacks by, strikers, but occurred as the result of a complete turning aside, by King and Lindsey, from their employer's business, and while they were on pleasure bent, it is a complete distortion of the statute, to find coverage. I realize that the statute is a remedial one and should be liberally construed and I have done my share of writing along that line,[2] but I respectfully submit that a liberal construction of a statue is one thing and a complete distortion of it, to make it include what it by its very nature and origin, excludes, is quite another.

The district judge was right, his judgment should be affirmed.

---

[2] Maryland Casualty Co. v. Levine, 5 Cir., 67 F.2d 816, 817; Constitution Indemnity Company v. Shytles, 5 Cir., 47 F.2d 441.