**TEXAS EMPLOYERS' INS. ASS'N v. HARRISON.**

**No. 14890.**

Court of Civil Appeals of Texas.

Fort Worth.

Dec. 5, 1947.

Rehearing Denied Jan. 9, 1948.

Nelson, Montgomery & Robertson, of Wichita Falls, for appellant.

A. H. Britain, Jack Connell, and Kearby Peery, all of Wichita Falls, for appellee.

HALL, Justice.

This workman's compensation suit was appealed to this court from a judgment rendered in a district court of Wichita County against appellant, Texas Employers' Insurance Association and in favor of Grace P. Harrison, appellee, wherein appellee recovered from a death benefit claim based on injuries sustained by her husband, Charles K. Harrison, Jr., deceased, who drowned in Lake Wichita on April 6, 1946, while employed by the assured, George W. Blandin, of Wichita County. The judgment is from jury findings to the effect that Charles K. Harrison, Jr., deceased, sustained an accidental injury while acting within the scope of his employment with George W. Blandin; that the appellee was entitled to a lump sum settlement; that Charles K. Harrison, Jr., did not step aside from the course of his employment by getting into the boat; that he did not step aside from the course of his employment by taking a ride in the boat. All other issues necessary for recovery were either covered by agreement, waiver, or the undisputed evidence. Judgment was rendered for the appellee, Grace P. Harrison, for maximum death benefits under the Compensation Act, to-wit: $6290.97.

Appellant's three points of error are: First, that there was no evidence of probative force to show that deceased at the time he was drowned was acting within the scope of his employment; second, that the evidence was insufficient to support a finding that the deceased was acting within the scope of his employment at the time he was drowned; and third, the court erred in failing to limit the testimony that the accident occurred during working hours and that the deceased was paid for a full day, to the question of whether or not deceased was an employee and not for the consideration of the jury in determining whether or not deceased was working in the scope of his employment. We will discuss the first two points together.

A portion of Sec. 1, Article 8309, Vernon's Ann.Civ.St., as amended, which applies to this case, is as follows: " * * * provided that an employee who is employed in the usual course of the trade, business, profession or occupation of an employer and who is temporarily directed or instructed by his employer to perform service outside of the usual course of trade, business, profession or occupation of his employer is also an employee while performing such services pursuant to such instructions or directions."

Appellee's deceased husband was a trusted employee of, and had been working for, George W. Blandin during the past seven years immediately prior to his untimely death and was shop foreman at the time of his death. Blandin was engaged in the business of repairing oil rigs. Mr. Harrison had the authority to use wide discretion in carrying on the affairs of his employer's business; besides acting as foreman of the assured's business, he was also instructed to do many personal services' for his employer, such as feeding cattle, checking and taking care of them, going after the employer's wife, taking her to and from town, etc. His usual and customary working hours were from 8:00 o'clock in the morning until 5:00 o'clock in the afternoon. On the date of his untimely death, to-wit: April 6, 1946, Harrison was instructed by his employer to take a truck and trailer and haul a boat to Lake Wichita for and on behalf of some of his employer's friends (as an accommodation to them), to-wit: H. B. Gilmore, Roy and Clyde Souther, and Drew L. Windsor. The boat was about 22 ft. long and weighed approximately 500 pounds. Harrison left his employer's place of business about 2:20 P.M., went to the location of the boat and helped his employer's friends load the same and then drove the truck to Lake Wichita. When they reached the Lake, Harrison helped them unload the boat and place it in the water. The boat was equipped and powered with an outboard motor, which had been recently repaired. Harrison knew that his employer's friends had not had an opportunity to try the motor out, this was discussed among them and, he being a mechanic, they perceived the idea that the motor might not run with sufficient power to push the boat two miles across the lake in order for the men to join their families where they were to have a picnic. With this thought in mind by all the men in the party, it was discussed among them that

Harrison should stay and see if the boat worked; if it did not, he was to bring the motor back to town. In order to ascertain if the motor would run, Harrison, along with the other gentlemen, got into the boat, the motor started and the parties proceeded a short distance from shore and when it was ascertained by Harrison that the motor apparently was functioning properly, he instructed the operator to take him back to shore in order that he might get back to the shop; he stated that his employer was waiting for him. As the boat neared the shore the propeller pin sheared or broke off. Windsor and Clyde Souther went ashore and found a nail which they inserted for a propeller pin. Harrison advised them how to start the motor but it would not start again, and after a considerable length of time Harrison decided to get out and push the boat to shore and take it back to town, but in the meantime the boat had drifted into deep water, apparently without Harrison's knowledge, and as he jumped out of the boat to tow it into shore, he drowned. This occurred about 4:00 or 4:15 P.M.

Harrison was not given any specific direction concerning what he was to do in accommodating his employer's friends, his employer left that entirely up to him. His employer testified that Harrison was not violating any instruction when he was assisting with the boat, that it was perfectly agreeable with him for Harrison to do so. The employer considered that Harrison was within his employment at the time of the drowning and paid his estate for a full day's work. He was sitting in the shop waiting for Harrison to return and had already made out his pay check when he heard the news. The employer was asked this question to which he answered:

"Q. You were prompted to do it, you instructed Harrison to take the boat to the lake merely because they were your friends, business associates and Mr. Gilmore had been in your employ? A. Yes, sir.

"Q. If he had remained at the Lake he would not have violated your instructions? A. He could do whatever he wanted to, it was all right with me.

"Q. In performing that task? A. Yes, sir.

"Q. You instructed Harrison to take the truck and take care of it? A. Yes, sir, I asked him if he wanted to, which was the same thing as a command, and he said 'Yes'."

He further testified that he sent Harrison along because he did not want to loan the truck to these men or any one else without furnishing a driver. In other words, he sent Harrison along to protect his property and to know that the truck would be properly handled on the highway under the management and control of his own employee.

The above testimony and other testimony in the case, which lack of space will not permit, shows the employee Harrison to have been acting within the scope of his employment at the time of his death. As this court stated in the case of Texas Emp. Ins. Ass'n v. Ferguson, Tex.Civ.App., 196 S.W.2d 677, writ refused, no reversible error, "We think under the conditions described it became an issue of fact for jury determination as to whether deceased was injured while in the course of his employment."

Appellant relies principally upon the case of Safety Casualty Co. v. Wright, 138 Tex. 492, 160 S.W.2d 238, 245, for a reversal of this case, its contention being that even though the deceased was acting within the scope of his employment in driving the truck and hauling the boat to Lake Wichita, that upon arriving at the lake and unloading the boat, his mission on behalf of his employer was completed and all that it was necessary for him to do was to return to his employer's shop at Wichita Falls. It further contends that the only possible reason for the deceased getting into the boat was in order to take a ride for and on behalf of his personal pleasure. Appellant further contends that even if we should hold that at the time Harrison got into the boat and took a boat ride that he was acting within the scope of his employment, then and in that event when he jumped out of the boat for the purpose of pulling it to the shore he was then without the scope of his em-

ployment because at that time he was not doing anything to further his master's business, the sole purpose being to accommodate the owners of the boat, and his acts were not connected in any way with the orders given him by his employer or a furthering of his business.

The facts in the Wright case, supra, revealed that the duty of the employee of the Magnolia Pipe Line Company was that of a pipe line walker; that he had walked a certain portion of the pipe line and then was riding a bus back, when the bus in which he was riding stopped running, the employee of the pipe line decided to assist the driver in starting the same; that while doing so he was killed by an explosion from gasoline. Appellant relies upon the following statement of the Supreme Court in the opinion on motion for rehearing:

"After a careful consideration of the question, we are compelled to the conclusion that, notwithstanding the fact that we still hold that Valentine C. Wright was in the course of his employment with Magnolia Pipe Line Company while a passenger of this bus, still it would be unreasonable, under the facts of this record, to say that he was in the course of such employment while under such bus for the purpose of making repairs thereon, either of his own volition, or at the request of the bus driver. Certainly at such time he had turned aside from the course of his employment with the Pipe Line Company, and was in the course of performing services for the bus owner or its driver. (Citing cases)."

This finding by the court was made after it was called to its attention that the plaintiffs had pleaded no cause of action in that they plead that Wright was injured while attempting to repair the bus; this fact is recognized in Chief Justice Alexander's concurring opinion in the case of American Mut. Liability Ins. Co. v. Parker et ux., 144 Tex. 453, 191 S.W.2d 844, 845.

In the Wright case the services to be rendered by the employee was that of assisting his employer in operating a pipe line and was in no way instructed to turn from such duty in order to accommodate the bus company in the operation of the bus, while in the instant case Harrison was instructed to turn from his regular line of duty, that of repairing oil rigs, and to pursue another and different business of his employer—that of accommodating friends. Thus the Wright case does not come under the same provision of the statute as the instant case, to-wit: that of performing a special mission or service for his employer.

 As stated in the Parker case, supra:

"Our decision will be based upon the theory of the petitioner, that at the time of the collision Parker was on his way to pick up the employees who rode with him to work that day and whose day's work ended at midnight. The question, thus narrowed down, is whether or not Parker was in the course of his employment while crossing the premises of his employer for that particular purpose.

"* * * It is apparent from the very nature of the definition that no exact formula can be prescribed which will automatically solve every case. Whether or not a given accident is so intimately related to the employment as to come within the definition must necessarily depend upon its own particular facts and circumstances * * *.

"* * * To permit recovery in the cases cited and deny recovery in the instant case could hardly be justified in view of the uniform holding that the Workmen's Compensation Law is a remedial statute which should be given a liberal construction in order to effectuate its evident purpose. * * * *"

██ On appellant's contention that the employee moved from the employment of Blandin and became the servant of the employer's friends, we quote from the case of Gipson et al. v. Skelly Oil Co., 5 Cir., 152 Fed.2d 588, 590, Circuit Court of Appeals, as follows:

"Temporary supervision and control by one, of the general servant of another, while an important, is by no means the sole, factor to be considered in determining whether a general servant sent by his employer to perform temporary service for another is the special servant of that other. * * * In Rhinelander Paper Co. v. Industrial Commission, 206 Wis. 215, 239

N.W. 412, 413, the court said: 'Where an employee enters the service of another at the command and pursuant to the direction of the master, no new relationship is created. While the employee may be subject to the direction of the temporary master, he is there in obedience to the command of this employer, and in doing what the new master directs him to do, he is performing his duty to the employer who gave the order. Whether or not there is in a particular case such a change of relationship is often a matter of great difficulty and as to which reasonable minds may come to different conclusions. In this case the employment was temporary. It is clear that the claimant was performing services in obedience to the direction of the master and that there was no consent on his part, express or implied, sufficient to make him the employee of the American Engineering Company. Consent cannot be inferred merely from the fact that the employee obeyed the commands of his master in entering the services of another.' " See Liberty Mut. Ins. Co. v. Nelson, 142 Tex. 370, 178 S.W.2d 514.

It was held in the case of King et al. v. Glens Falls Indemnity Co., 5 Cir., 124 F.2d 942, that a recovery was permissible where a ship company directed the company's employee to turn from his duty as soliciting freight agent and become one of the manager's body guards and where the manager ordered said employee to accompany a customer and his daughter on a boat trip for the purpose of fishing and while said employee was on said boat, he drowned; while it was the contention of the insurance company that when death came to King he had departed from his duty as body guard and soliciting freight agent and was pursuing his own personal pleasure of fishing, yet the court held that while so doing he was in the course of his employment and performing services incident thereto at the time of his death.

■ It is also the settled law in this state that where an employee mixes personal matters or missions with those connected with his employment, he does not thereby remove himself from the course of his employment. See Associated Indemnity Corporation v. Billberg, Tex.Civ.App., 172

S.W.2d 157; Maryland Casualty Co. v. Stewart, Tex.Civ.App., 164 S.W.2d 800; King et al. v. Glens Falls Indemnity Co., supra.

■ We find the well established rule to the effect that an injury arises out of work or business of the employer, so as to become an injury sustained in the course of employment, when such injury results from a risk or a hazard which is connected with the work or business of the employer, applies in this kind of a case. In other words, we find that Harrison was doing an act which had, at least, a causal connection between the conditions and orders under which he was required to perform when he received his untimely death, and had it not been for the order which he received from his employer he would no doubt have not sustained such injury. The assistance which he was rendering his employer's friends was incidental to and connected with what his employer desired of him to do and which Harrison construed he was to do in fulfilling his contract of service under such order. He assumed a risk or a hazard which he should have performed in order to comply with his master's general task of accommodating friends. The accident occurred during Harrison's active hours of labor; and he was being paid by his employer to perform the services rendered. No doubt the above quoted portion of the statute was designed to cover such cases.

The facts in this case are not as far-reaching as in King et al. v. Glens Falls, supra. It is impossible for us to apprehend that the employer expected Harrison to unload the boat and the employer's friends out on the shore of the lake and leave them stranded when Harrison knew that the boat might not run and that his employer's friends were relying on the boat to transport them across the lake two miles to where their families were located. We overrule appellant's contentions in points 1 and 2.

■ We cannot agree with the contention set out in appellant's point number 3 wherein it complains of the court's refusing its requested instruction to limit the jury's consideration of certain testimony, to-wit,

"that the accident occurred during working hours" and "that the deceased was paid for a full day," to the question of whether or not the deceased was an employee, and to instruct the jury not to consider the same in determining whether or not the deceased was working in the scope of his employment, for the reason that we feel that such testimony may be considered by the jury for all purposes and more particularly it may be considered as a circumstance to show that the employee was working within the scope of his employment.

Having considered all points of error, we affirm the judgment of the trial court.