## CONSOLIDATED UNDERWRITERS, Appellant,

### v.

### J. H. DUNCAN et al., Appellees.

### No. 15676.

Court of Civil Appeals of Texas.

Fort Worth.

Sept. 30, 1955.

Rehearing Denied Oct. 28, 1955.

Nelson, Montgomery, Robertson & Sellers, and Otis E. Nelson, Jr., Wichita Falls, for appellant.

Grindstaff, Zellers & Hutcheson and A. E. Zellers, Weatherford, for appellee J. H. Duncan.

Jones, Parish & Fillmore and Elmer H. Parish, Wichita Falls, for appellee Traders & General Insurance Co.

Burford, Ryburn, Hincks & Ford, Logan Ford and Joseph M. Stuhl, Dallas, for appellee Texas Employers' Insurance Association.

BOYD, Justice.

This is a Workmen's Compensation case. Appellee J. H. Duncan recovered judgment for total and permanent disability against appellant Consolidated Underwriters. The suit was originally filed against appellant and Texas Employers' Insurance Association, hereinafter referred to as Texas Employers. Subsequently, appellee filed suit against Traders & General Insurance Company, hereinafter called Trad-

ers & General, and the causes were consolidated for trial.

Appellee alleged that the injury complained of was received by him in the course of his employment by either Rathke Oil Company, hereinafter called Rathke, Robert T. Morgan, Morgan Brothers, or Robert T. Morgan and Morgan Brothers. Appellant was Rathke's compensation insurance carrier; Texas Employers was Robert T. Morgan's carrier; and Traders & General was Morgan Brothers' carrier.

At the conclusion of the evidence offered by appellee, the court sustained motions for instructed verdict for Texas Employers and Traders & General. The cause as between appellee and appellant was submitted to a jury and the jury found that appellee was totally and permanently disabled, and that he was injured while in the course of his employment by Rathke.

Appellant's points for reversal are, that it was error to overrule appellant's motions for instructed verdict and for judgment non obstante veredicto on the grounds that there was no evidence, and that the evidence was insufficient, to support the finding that the injury was received in the scope of appellee's employment by Rathke, and the finding that appellee was not a volunteer as to Rathke; that it was error to instruct a verdict for Texas Employers because as a matter of law it could not be said that appellee was not an employee of Robert T. Morgan and that the evidence was sufficient to go to the jury as to whether appellee was an emergency employee of Robert T. Morgan; and that it was error to instruct a verdict for Traders & General because as a matter of law it could not be said that appellee was not an employee of Morgan Brothers and the evidence was sufficient to support an issue as to whether appellee was an emergency employee of Morgan Brothers.

At the time of his injury, appellee was employed by Rathke as a pumper on the Kemp lease. He lived on the lease. His working hours were usually six hours a day for six days per week and four hours on Sunday, and his duties were usually performed by working about four hours in the forenoon and about two hours in the afternoon. However, when necessary, appellee worked during other of the twenty-four hours of the day. He was paid $1.25 per hour for forty hours per week, and $1.87½ per hour for overtime.

About six o'clock on the evening of November 11, 1953, J. A. Stuard, a pumper on the Comet lease owned by Robert T. Morgan and situated about two miles from the Kemp lease, sent his daughter to appellee's house to ask appellee to come to the Comet lease and help start an engine. Appellee went to the Comet lease and assisted in starting the engine and while doing so, he received the injury complained of.

Appellee had been working for Rathke on the Kemp lease for about a year at the time of the accident. He testified that shortly after he started working there, he went to another lease where Stuard was employed as a pumper by Robert T. Morgan and helped Stuard start an engine, and upon his return to the Kemp lease his superintendent, Lough, was waiting for him; that he told Lough where he had been and what he had been doing, and that Lough said, " 'Well, that is the thing to do.· You help them boys and they will help you;' " that Lough told him to go help neighboring pumpers when they requested him to do so; that before his injury appellee had gone to the Comet lease several times at Stuard's request and helped Stuard start his engine; that several times, at appellee's request, Stuard and Sorrels, another pumper for Morgan, had come to the Kemp lease and helped appellee start his engine; that on one occasion when he was helping Stuard, Stuard's superintendent, Hudson, drove up and said, " 'Well, that is the way for you boys to get along, help each other.' "

It was twelve miles from the Kemp lease to any other lease operated by Rathke. There were several times when appellee had to have help to start his engine.

Had not the pumpers on the nearby leases helped him, it would have been necessary for him to travel twelve miles to get help, and if he failed then to find a pumper at his place of work, the delay would have been further extended. Appellee testified that the wells on the Kemp lease never made their allowable, and that any cessation of pumping operations would cut down their production.

Lough testified that appellee asked him whether he should go and help the neighboring pumpers if they sent for him again, and he told him that "if he wanted to go and help them it was all right, to go;" that it was to the interest of Rathke to have somebody that would come and help start the engine when one man could not do so;

"Q. Anyway, you told him it was all right to go over and help these people, didn't you? A. Yes, sir.

"Q. You also told him that is the only way, and by doing that when we need them they will come? A. That's right, and—

"Q. That is like having money in the bank, isn't it? Whenever you call on them, present the check, they will pay off. When you have got good conscientious people obligated to you they come and help you, don't they, and pay you back? A. Well, we didn't help them for an obligation for them to come back."

Appellee neither asked for nor received any compensation for performing such services for other pumpers.

Article 8309, sec. 1, R.C.S., Vernon's Ann.Civ.St. art. 8309, § 1, is in part as follows: " * * * provided that an employee who is employed in the usual course of the trade, business, profession or occupation of an employer and who is temporarily directed or instructed by his employer to perfrom service outside of the usual course of trade, business, profession or occupation of his employer is also an employee while performing such services pursuant to such instructions or directions; * * *."

■ We think the facts in this case make applicable the above-quoted provision of the statute, and that the evidence was sufficient to support the jury's finding that even though appellee was injured while assisting the pumper on the Comet lease, which was being operated by Robert T. Morgan, he was nevertheless in the course of his employment by Rathke at the time. Texas Employers Ins. Ass'n v. Ferguson, Tex.Civ.App., 196 S.W.2d 677; Texas Employers' Ins. Ass'n v. Harrison, Tex. Civ.App., 207 S.W.2d 168; Grandstaff v. Mercer, Tex.Civ.App., 214 S.W.2d 133.

In Texas Employers' Ins. Ass'n v. Harrison, supra, an employer instructed his shop foreman to take a truck and trailer and haul a boat to Lake Wichita for use by some of the employer's friends, and as an accommodation to them; the foreman, after delivering the boat and without any instructions from his employer, but in order to ascertain if the motor on the boat would run, got into the boat with the friends of his employer, and, after it was found that the motor ran properly, and while the operator of the boat was steering it back to the shore so the foreman could return to his place of work, the propeller pin was sheared; the foreman got out of the boat to push it to the shore and while trying to do so was drowned.

It was held that the foreman lost his life while in the course of his employment by the employer.

It was not conclusively shown that at the time appellee was injured he was a volunteer as to Rathke, and the jury's finding that he was not such volunteer has sufficient support in the evidence. Neither can it be said that it was conclusively shown that appellee, at the time of the injury, was an employee either of Robert T. Morgan or Morgan Brothers.

■ It appears to us that appellant is in no position to complain of the court's action in instructing a verdict for Texas

Employers and Traders & General. Appellant did not ask any relief against either of those defendants. He seeks none here. Whatever defenses appellant may have had because of any relationship between appellee and the employers whose insurance was carried by Texas Employers and Traders & General, were still available to appellant even though they were no longer parties to the suit. If appellee, at the time of his injury, was in the employment of Robert T. Morgan, or Morgan Brothers, or both Robert T. Morgan and Morgan Brothers, a finding to such effect would have been available to appellant even though Texas Employers and Traders & General had never been parties to the suit. The points involving their dismissal are overruled.

Finding no error, the judgment is affirmed.