TRADERS & GENERAL INSURANCE CO.,
Petitioner,

v.

Billie Jean PARKER et al., Respondents.

No. A–9554.

Supreme Court of Texas.

Jan. 22, 1964.

Rehearing Denied March 11, 1964.

Turner & Seaberry, Eastland, for petitioner.

Waggoner Carr, Atty. Gen., Fred D. Ward, Asst. Atty. Gen., Alfred M. Scott, Austin, McMahon, Smart, Sprain, Wilson & Camp, Abilene, for respondents.

WALKER, Justice.

This is a workmen's compensation case. Henry E. Ford, who was regularly employed by Coleman County Electric Cooperative, Inc., lost his life while blasting an oil well slush pit for Maxwell Drilling Company, hereinafter referred to as Maxwell. Traders & General Insurance Company was the Cooperative's compensation insurance carrier, and Maxwell had a similar policy issued by Texas Employers' Insurance Association. Mrs. Billie Jean Parker brought this suit against the two insurance companies and the Industrial Accident Board to recover death benefits under the Workmen's Compensation Act. She claims to be the adopted daughter of Henry E. Ford by estoppel, and alleged that he was an employee of and engaged in the course of his employment for the Cooperative and Maxwell at the time of his death.

All defendants denied that Mrs. Parker was the adopted daughter of Ford. The Industrial Accident Board sought a recovery for the benefit of the Second-Injury Fund, alleging that Ford died in the course of his employment for the Cooperative and/or Maxwell. Each of the insurance carriers took the position that Ford was an independent contractor, or in the alternative was an employee of the company insured by the other carrier, at the time of his death. The jury found that Mrs. Parker was not the adopted daughter of Ford. It also found that Ford was not working as an independent contractor at the time of his death, but was an employee of the Cooperative and a borrowed employee of Maxwell and acting within the scope of his employment for each. Upon motion by Texas Employers, the trial court disregarded the findings that Ford was a borrowed employee of Maxwell and engaged in such employment at the time of his death. Judgment was entered that Mrs. Parker take nothing on her claim, and that the Industrial Accident Board recover $1,500.00 from Traders & General. The Court of Civil Appeals affirmed. Tex.Civ.App., 366 S.W. 2d 107.

Ford had been employed by the Cooperative for a number of years, and he worked regularly eight hours a day for five days each week, Monday through Friday. While the company had men on stand-by duty over the week end, Ford was not one of them. He was required to and did work for the Cooperative only forty hours a week. On Saturday, September 11, 1954, S. C. McKinley, who was a tool pusher for Maxwell, telephoned Leo B. Brandt, who was line superintendent for the Cooperative, to inquire about having some blasting done for a slush pit on a location in Coleman County. Brandt told McKinley that the Cooperative did not do blasting for other concerns. He also advised that some of the employees did such work on the side and promised to talk with them and ascertain whether they would drill and shoot the pit.

Brandt called M. D. Snow, who was another regular employee of the Cooperative, and asked if he wanted to do the work. Snow replied that he did provided that he could get someone to help him. Snow then got in touch with Ford, who agreed to help with the blasting. Upon being advised that Snow and Ford were willing to do the work, Brandt arranged for McKinley to meet them at the Cooperative's warehouse. Snow and Ford followed McKinley to the land on which Maxwell was drilling an oil well. After showing them where the pit was to be located and telling them that it should be about four feet deep, McKinley left. Ford and Snow did some work that day, and returned to the pit on Sunday. McKinley was also on the premises, but did not go near the place where Ford and Snow were working. Ford was killed when rock and debris hurled by a dynamite blast fell on and dented the top of the truck cab in which he was sitting, thereby crushing his skull.

The equipment used by the men in doing the drilling and blasting, including the truck, air compressor, air hammer, electric cable, dynamite and caps, was owned by the Cooperative. It was the custom of the company to allow its employees to use such equipment when they did blasting for others. Although the workmen fixed the prices for their labor, they were not paid directly by the person for whom the work was done. Instead they turned their charges in to the Cooperative, which withheld income tax and social security and paid the balance to the men. The company then billed the person for whom the blasting was done separately for the labor charges turned in by the workmen and for the use of its equipment. That is the way the charges were handled with Maxwell in the present instance. The Cooperative made no profit on this or other similar transactions.

Ford and Snow had many years of blasting experience. Maxwell arranged for them to do a job that required their special skill and which could be completed in a relatively brief period of time. They used

equipment belonging to their regular employer, fixed their own compensation, and determined the hours when they would work. All of the details of the work were left entirely to their judgment, and there is no evidence suggesting that Maxwell had the right of, or ever attempted to exercise, control over them other than to point out the location of the pit and direct that it be four feet in depth. We agree with the courts below that the record fails as a matter of law to show that Ford was an employee of Maxwell, borrowed or otherwise. See Insurors Indemnity & Ins. Co. v. Pridgen, 148 Tex. 219, 223 S.W.2d 217; Industrial Indemnity Exchange v. Southard, 138 Tex. 531, 160 S.W.2d 905; Shannon v. Western Indemnity Co., Tex.Com.App., 257 S.W. 522.

In support of its contention that Ford and Snow were acting in the course of their employment for the Cooperative, the Industrial Accident Board relies primarily on Insurors Indemnity & Ins. Co. v. Pridgen, supra; Goodwin v. Wilhelm Steel Const. Co., Tex.Civ.App., 311 S.W.2d 510 (wr. ref.); Texas Employers' Ins. Ass'n v. Brooks, Tex.Civ.App., 266 S.W.2d 260 (wr. ref. n. r. e.); and Polanco v. Austin Bridge Co., Tex.Civ.App., 348 S.W.2d 728 (no writ). Equipment was there leased by its owner on a "fully operated" basis, and it was held that the operator remained within the scope of his general employment by the lessor while using such equipment for the benefit of the lessee. Mrs. Parker also cites Texas Employers' Ins. Ass'n v. Harrison, Tex.Civ.App., 207 S.W.2d 168 (wr. ref. n. r. e.), and Consolidated Underwriters v. Duncan, Tex.Civ.App., 282 S.W.2d 888 (wr. ref. n. r. e.), in which a regular employee was injured or lost his life while doing something that could fairly be regarded as within the scope of a special mission or service which his employer instructed him to perform. None of these cases has any application here.

The Cooperative did not agree to furnish its equipment with someone to operate the same, and did not require, direct or even suggest that its employees undertake the work. It would have had no right to substitute other employees after McKinley made his arrangements with Ford and Snow. Brandt merely asked Snow if the latter wanted the work, and there is nothing in the record to indicate that such an inquiry amounted to an order. The company then had nothing further to do with the operation except to supply the equipment, pay the men the charges they fixed for their labor, and bill Maxwell therefor. In view of the other facts disclosed by the record, these circumstances do not warrant an inference that Ford and Snow did the blasting in the course of their employment by the Cooperative. The billing for the labor was done purely as an accommodation to the men, and they were allowed to use the equipment primarily for their own benefit. Even if it could be said that the Cooperative permitted its equipment to be used in this way for the purpose of promoting better public relations, that would constitute nothing more than a scintilla of evidence that the men were engaged in or about the furtherance of the affairs of their employer while doing the blasting. According to the undisputed testimony, Ford and Snow simply agreed to do a job on their own time and at their own prices, and were to handle the work as they considered proper without any supervision or control from the Cooperative. The company might have withdrawn its equipment at any time and brought the operation to an end, but the record does not indicate that it had the legal right, and it certainly made no effort, to exercise any control over Ford and Snow in the details of the work. In our opinion there is no evidence to support the finding that Ford received his fatal injuries while acting within the scope of his employment by the Cooperative.

The conclusions stated above require that judgment be rendered in favor of both insurance carriers, and it is unnecessary to consider the other points of error brought forward by Mrs. Parker. The judgment

of the Court of Civil Appeals is modified so as to provide that the judgment of the trial court, in so far as it awards a recovery to the Industrial Accident Board, be reversed and that judgment be rendered that the Board take nothing. As so modified, the judgment of the Court of Civil Appeals is affirmed.