Leonard J. GIBSON, Appellant,

v.

ROBERT LANGE, Inc., et al., Appellees.

No. 13179.

Court of Civil Appeals of Texas. Houston.

Feb. 13, 1958.

Patterson & McDaniel, Houston, Louis M. Moore, Houston, of counsel, for appellant.

Baker, Botts, Andrews & Shepherd; Ralph S. Carrigan, William C. Bullard, Houston, for appellees.

WERLEIN, Justice.

Appellant, Leonard J. Gibson, brought this suit in Harris County, Texas, against Robert Lange, Inc., and Wilborn Geick, jointly and severally, to recover damages for personal injuries sustained by him on or about September 10, 1955, alleging that at such time he was working for his employer, Peterson Construction Company, and was seriously injured due to the negligence of appellee, Wilborn Geick, who was working in the course of his employment for appellee, Robert Lange, Inc. Texas Employers Insurance Association intervened in the suit to recover compensation benefits it had paid appellant as an employee of Peterson Construction Company under the Workmen's Compensation Act of the State of Texas, Vernon's Ann. Civ.St. art. 8306 et seq. Appellees filed pleas of privilege to be sued in Washington County, the county of their residence. Appellant filed a controverting affidavit, setting out that under the allegations of his first amended original petition his cause of action came within Section 9a of Article 1995, V.A.T.S., since it was based upon an act of negligence which occurred in Harris County.

The trial court sustained appellees' pleas of privilege and transferred the cause to the District Court of Washington County. Appellant requested the court to make findings of fact and conclusions of law. Under Rule 385, Texas Rules of Civil Procedure, the court did not comply with such request. Appellant perfected his appeal and the case is now before this Court to determine whether or not the trial court erred in sustaining said pleas of privilege.

Appellant contends that at the time of his injury he was acting within the course of his employment for his employer, Peterson Construction Company. Appellees, on the other hand, contend that at such time appellant was the borrowed employee of appellee, Robert Lange, Inc. If appellant is correct in his contention, he may prosecute this cause of action in Harris County against appellees. If, however, appellant was at the time of his injury the borrowed employee of Robert Lange, Inc., then he would have no cause of action against appellees because Robert Lange, Inc. carried Workmen's Compensation Insurance and Geick was a fellow servant.

It has been held in order to maintain venue under Section 9a of Article 1995, that it is necessary to prove actionable negligence on the part of the defendant. Therefore, even if appellee Geick was negligent on the occasion in question, there could be no recovery by appellant in the event he was the borrowed employee of appellee Lange at the time of his injury, because there would be no valid cause of action against such appellee and hence no actionable negligence. See Process Engineering Company of Forth Worth v. Rosson, 287 S.W.2d 511, decided by this Court.

The crucial question in this case, therefore, is whether at the time of his injury appellant was engaged in working in the course of his employment for his general

employer, Peterson Construction Company, or whether at such time appellant was a borrowed employee of Robert Lange, Inc. The trial court, in sustaining appellees' pleas of privilege, evidently concluded that there was no actionable negligence on the part of appellees due to the fact that appellant had become the borrowed employee of Robert Lange, Inc. at the time he sustained his injuries. In order to determine whether the court erred in so finding, it is necessary to examine the evidence adduced on the hearing of the pleas of privilege.

There was testimony that appellant was employed by Peterson Construction Company and had been working for it for a number of years. Peterson Construction Company was engaged in heavy construction work such as pile driving, heavy rigging and moving heavy equipment, although as a rule it did not move equipment for other contractors. Appellee, Robert Lange, Inc., was building an approach or ramp to the 69th Street Bridge, which was close to Peterson Construction Company's yard and office. On the occasion in question, appellant, who was operating a low-boy (a truck with low trailer behind), had orders from his employer to go around to the Company's yard to move a tractor for Robert Lange, Inc. (hereinafter called Lange). He was told that appellee Lange would load the tractor with its operator, and then appellant was to move it to some place designated by Lange for repairs. As a rule, Peterson Construction Company would load the equipment with its men and operator, but if the owner of the equipment preferred it could take care of the loading. Appellant testified that appellee Lange had a foreman supervising the loading operation and that when such was the case it was customary to let them go along with the loading.

Appellant further testified that he drove the low-boy as he was ordered to do and put it at the proper place and fixed the brakes for the loading of the tractor. He testified that he put two timbers in place extending from the low-boy to the ground so that the tractor could be moved onto the low-boy. At the trial he stated that he had placed the timbers prior to the time Lange's foreman arrived. In his deposition previously taken, he testified that Lange's foreman told them to put the timbers in place and was the one who suggested such method first. The court, of course, was at liberty to accept either version of the testimony.

The right track of the tractor was defective so that it could not move under its own power up the boards that had been placed from the ground to the low-boy. Thereupon, appellant, or one McLain, who was a swamper on the job with appellant, suggested to the dirt foreman that they undertake to use a winch on the low-boy and pull the tractor up on the side where it was defective. The foreman rejected the suggestion and decided to get a bulldozer or "cat" to dig a hole and make a ramp behind so that the tractor could be driven onto the low-boy in that way. Thereupon the foreman, who was on the low-boy directing the work, ordered appellee Geick to back the tractor off of the timbers. He gave orders to appellant and his associate McLain to move the timbers. While appellant was moving the timbers, Geick, who was operating the tractor, instead of backing the tractor, placed it in the wrong gear and the tractor moved forward, pinning appellant between it and one of the pieces of timber he and his associate were moving.

Appellant testified that Lange's foreman was in charge of the whole operation. He also testified, when asked if he felt that the foreman was in charge of the job, that it was customary for him to take orders from whomever they had for supervision of the work and that he had received instructions from Peterson Construction Company to such effect. He stated with reference to orders from Peterson Construction Company in regard to the actual loading of equipment on the low-boy that his instructions were to follow the orders of the one supervising the loading. He further testified as follows:

"Q. Reading further, Mr. Gibson (and then he read the question to him)

"Q. All right, sir. With respect to the work that you went to do, you put yourself under his instructions? A. That's right.

"Q. Is that correct? A. I more or less assumed that he was in charge. The company didn't take me in and instruct me to take orders. They said they would load it with their own operator.

"Q. Mr. Gibson, with respect to placing the timber, with respect to removing the timber, with respect to his refusing to use the winch, and with respect to who gives the orders as to how you were going to dig the hole instead of using the winch, this dirt foreman was giving all the orders? A. He was the only man directing the operation and signaling the truck.

"Q. And there was no other man directing the operation? A. No, sir.

"Q. You weren't directing the operation, anything like that? A. No, sir.

"Q. You were carrying out instructions and orders? A. You might say that, yes, sir."

One of the leading cases on the doctrine of borrowed servants is Hilgenberg v. Elam, 145 Tex. 437, 198 S.W.2d 94, 96. In that case a bulldozer and driver had been subleased by Elam to Hilgenberg and Willingham for use in clearing their farm. On the occasion in question the operations of the bulldozer were directed by Hilgenberg, who was present and pointed out the trees he desired to be knocked down. During such operation Hilgenberg was struck and killed. The Supreme Court upheld a directed verdict in favor of Elam on the ground that at the time of Hilgenberg's fatal injury he was directing and controlling the details of the work that was being done. The Court quoted at length from Restatement of the Law of Agency, Sec. 227, wherein it is stated that the fact that a person is the general servant of one employer does not, as a matter of law, prevent him from becoming the special servant of another who may become liable for his acts. He may become the other's servant as to some acts and not others. The test is whether in the performance of the wrongful acts the servant continues liable to the direction and control of his general employer or becomes subject to that of the person to whom he is lent. The Court stated:

"Whether the borrowed employee is doing something within the normal scope of the business of the general employer or of the special employer is certainly a most important factor in determining the question of liability."

It is also stated in Section 227, Ibid.:

"Since the question of liability is always raised because of some specific act done, the important question is not whether or not he remains the servant of the general employer as to matters generally, but whether or not, as to the act in question, he is acting in the business of and under the direction of one or the other. It is not conclusive that in practice he would be likely to obey the directions of the general employer in case of conflict of orders. The question is as to whether it is understood between him and his employers that he is to remain in the allegiance of the first as to a specific act, or is to be employed in the business of and subject to the direction of the temporary employer as to the details of such act."

See Central Surety & Insurance Corp. v. Hampton, 5 Cir., 1950, 179 F.2d 261, 264, in which the court stated:

"The test of whether or not a general employee is also a special employee is to be determined by the situation existing 'at the time of the injury' and not merely 'on the date of the accident' as formulated in the special issues submitted."

In the case of Pacific Employers Insurance Company v. Liberty Mutual Insurance Co., 5 Cir., 1949, 147 F.2d 1, 2, one Walston was employed by Floyd Dixon as a dragline helper. He and the dragline and the dragline operator were rented to Knutson Construction Company. Knutson had a representative on the job at all times, who told the dragline operator what to do and where to do it. He gave specific instructions as to the grade, width, depth, and direction of the ditch to be dug, where to pile the dirt and how to dig when quicksand was reached. On the day of the injury the motor of the dragline stopped because the vacuum tank was out of gas. After gas had been put into the tank the driver of the machine instructed Walston to crank the motor, and the fatal injury happened while Walston was attempting to crank it as instructed. The court, in deciding that the deceased was serving the interests of Knutson Construction Company at the time of his injury as a special employee, made the following statement:

" * * * this brings us to the crucial point in the case. If the motor was cranked to ascertain whether or not it was fixed and ready for operation, as the last step in repairing it, then Walston was working for Dixon, his general employer, at the time of his injury; but, if the motor was fixed, and the vacuum tank was filled with gas, and Walston was instructed by (the dragline operator) to crank the motor for the purpose of resuming operations with the dragline, i. e., in order to begin digging again, it is clear that the deceased met his death in the performance of services for his special employer, Knutson Construction Company. Undoubtedly, Walston was at all times subject to some control by both his general and special employers; * * * If from the undisputed facts, and all reasonable inferences deducible from them, fair and reasonable men might draw different conclusions as to the ultimate fact involved, then the issue was for the jury to determine; otherwise, it was for the court."

The instant case is distinguishable from the case of Insurors Indemnity & Insurance Co. v. Pridgen, 148 Tex. 219, 223 S.W.2d 217. In that case the deceased was a dragline assistant and an employee of one Smith. Smith leased the dragline and the deceased and another employee to Sonnier Construction Company which in turn leased the same to Texas Shipbuilding Company (hereafter called Shipyard). The court held that the deceased was not a special employee of Shipyard at the time of his death, apparently basing its opinion partly on the ground that it was customary for Smith to lease out his draglines and similar equipment "fully operated" and the dragline was a valuable type of machine, but mainly on the ground that Zinnecker who was not a foreman or work superintendent of Shipyard, but its president, and who gave all the directions that were given, restricted his activity to pointing out and describing to the dragline operator the location and some general specifications of the work, and thereafter retired from the scene until the dragline operator would report it finished. In the meantime, Zinnecker did not leave any other representative of Shipyard present to supervise or observe the work that was being done. The court stated that there was a clear absence of evidence that Shipyard was either to control the details of the work or that it made any attempt in fact to control them.

In the instant case, Lange's foreman was the only one controlling and directing the work of loading the tractor on the low-boy, and appellant was taking orders and instructions from him.

See also Rector v. Walden, Fulton & Payne, Tex.Civ.App., 276 S.W.2d 933, 938, refused, n. r. e., in which the decisions in the Elam and Pridgen cases were carefully reviewed. The primary distinction between said cases lay in the super-

vision and direction given the work. The court made the following statement:

"The Pridgen and Elam cases are materially distinguishable as to the supervision and direction of the work being done in each case at the very time of the injury and the transactions in connection therewith. In the Pridgen case the machine operator was his own boss but was in close touch with his general employer, while in the Elam case, the borrower who was killed was supervising the work and closely directing it at such time."

In determining the sufficiency of the evidence to support the trial court's judgment on a plea of privilege hearing, the rule is as stated by our Supreme Court in Banks v. Collins, 152 Tex. 265, 257 S.W.2d 97, 100, as follows:

"If discarding all adverse evidence and giving credit to all evidence that is favorable to the successful party, and indulging every reasonable conclusion that is favorable to him, a trier of the facts might have found in his favor, then it is to be concluded that there is evidence to support the finding. * * *

" * * * A new trial may always be ordered by the Court of Civil Appeals where the verdict or findings in the trial court are against the great weight and preponderance of the evidence if the point has been properly raised. See the Wininger case [Wininger v. Fort Worth & D. C. R. Co., 105 Tex. 56, 143 S.W. 1150], supra; also in re King's Estate [150 Tex. 662], 244 S.W.2d 660. However, if the evidence should not so greatly preponderate in favor of the plaintiff as to indicate that the finding of no negligence was the product of bias, then the duty of the Court of Civil Appeals would be to affirm the judgment of the trial court sustaining the plea of privilege."

■ Under this authority, this Court will not be justified in reversing the lower court if there is any evidence which would support the trial court's finding and order, provided such order is not so against the great weight and preponderance of the evidence as to indicate that the finding of no actionable negligence was the product of bias.

■ We have concluded that under the testimony in this case, the court was warranted in finding that appellant had become the borrowed employee of Robert Lange, Inc. Certainly, the testimony of appellant raised a fact issue with respect to his status as a loaned servant to Lange. The evidence showed that appellant had placed himself under the instructions of Lange's foreman and was carrying out such instructions and orders during the loading operation, and at the time he undertook to move the pieces of timber and was injured. There was evidence that Lange's foreman had complete and detailed control and supervision of the loading operation in question, and that appellant had been ordered by such foreman to put the timbers in place, and later to remove the same. The instructions which he gave to appellant to remove the timbers were preparatory to moving the tractor and digging a hole that the low-boy might back into in order to facilitate the loading of the tractor. It is evident that Lange's foreman had control and supervision not only of the loading but also of those involved in the work of loading, including the right to direct and control the activities of appellant in every detail of the loading operation. According to the testimony of appellant, it was both customary and the intention of his employer that he place himself under Lange's instructions. The work being done by appellant at the time of his injury was essentially Lange's. Lange assumed the responsibility, control and supervision of the loading operation. If the work of loading had been that of Peterson Construction Company, such company,

according to appellant, would have furnished a load operator to direct the work of loading. Appellant testified that his responsibility began after the tractor was loaded, and also to the effect that where another operator was used for loading, the responsibility was theirs. Appellant testified, "It is customary whoever they have for supervision we take orders from them." In the instant case, the loading operation involved two valuable machines, to wit: the truck with the attached low-boy trailer belonging to Peterson Construction Company, and the tractor belonging to appellee Lange; whereas, in the Pridgen case, supra, there was only one valuable machine involved.

Peterson Construction Company was not, as a rule, in the business of moving equipment for other persons, according to the testimony of appellant. The following statement from the Restatement of the Law of Agency, sec. 227, p. 502, is therefore pertinent:

"A person who is not in such business and who, gratuitously or not, as a matter not within his general business enterprise permits his servant and instrumentality to assist another, is more apt to intend to surrender control."

Appellant has cited the case of Casualty Underwriters v. Rhone, 134 Tex. 50, 132 S.W.2d 97. That case is clearly distinguishable from the instant case. In that case, the plaintiff was employed by McDaniel, who was a sub-contractor for the erection of the steel frame in a residence being erected by the general contractor, Beaumont Development. One McCarter was the foreman for Beaumont Development and also the foreman for McDaniel. McDaniel's employees had installed a steel joist which interfered with work that the plumbing contractor wanted to do. McCarter, therefore, directed the plaintiff to change the location of the joist. In doing so he was injured. The court held that plaintiff was McDaniel's employee at the time of his injury because the steel work being done was McDaniel's work which he had contracted to do. Moreover, the foreman was also McDaniel's foreman.

In the instant case, however, the foreman was the employee of appellee Lange only, and there were no sub-contractors whose work had to be coordinated to a final result. In the Rhone case, Rhone was McDaniel's employee doing McDaniel's work, whereas in the present case the arrangement with Peterson Construction Company was that Lange was to have charge of the loading operation, so that the work of loading was essentially Lange's, and Lange supervised and controlled the same.

See also Maryland Casualty Co. v. Donnelly, Tex.Civ.App., 50 S.W.2d 388, writ dismissed.

In our opinion there was ample evidence to support the finding and order of the court. The judgment of the trial court is affirmed.