Claude P. **GOODWIN**, Appellant,

v.

**WILHELM STEEL CONSTRUCTION CO.,** Inc., Appellee.

No. 5273.

Court of Civil Appeals of Texas.

El Paso.

March 5, 1958.

Rehearing Denied March 26, 1958.

Edwards, Belk, Hunter & Kerr, El Paso, for appellant.

Kemp, Smith, Brown, Goggin & White, El Paso, for appellee.

WILLIAMS, Justice.

Appellant states the nature of the case correctly, as follows:

"This is a suit brought by Claude P. Goodwin against the appellee, Wilhelm Steel Construction Co., Inc., for damages for injuries sustained by the appellant when an employee of appellee knocked a 10-pound wedge loose from a structure, causing the same to fall thirty or forty feet and strike the ap-

pellant on the arm, breaking his arm and injuring his leg, requiring hospital treatment and alleging that the appellant had been injured permanently. The appellee answered by general denial, and specific denials, and specifically plead that the appellant was the 'loaned employee' of the appellee. The appellee moved for summary judgment, and upon stipulations and depositions being submitted to the court, the court granted the appellee's motion for summary judgment, and this appeal ensues."

The only question before us is to determine if the trial court was correct in finding that appellant was a loaned employee of appellee, or if he remained the employee of his general employer, Southwest Transfer Co.

The facts are largely undisputed and show appellant was the operator of a crane belonging to his general employer Southwest Transfer, and had been working for several weeks on a job at Fort Bliss, Texas, where appellee was a subcontractor on an airplane hangar construction project. Appellant made claim for compensation against the insurance carrier for Southwest Transfer and, after collecting same, brought this suit against appellee, with Texas Employers Insurance Association being subrogated to a repayment of money it had paid appellant. Appellee, Wilhelm Steel Construction Co., Inc., had rented from Southwest Transfer a crane fully operated and maintained on an hourly rental basis. Appellant was the operator of the crane. It was his duty to lift, by use of the crane, the iron beams into place which were to support the airplane hangar. Employees of the appellee directed his operation. That is, they gave the appellant signals,—when to lower a beam or to raise it, and when to move it to the right or to the left. They directed his movements so minutely and particularly that the prefabricated holes in the beams would correspond, and the bolts could be inserted without any further

drilling. Appellee contends that this minute power and exercise of control of the operation established that appellant was a loaned employee by Southwest Transfer to the appellee.

Appellant contends that the control exercised by appellee went only to the result to be obtained, and was not control over the machinery leased or over its operator, and was, therefore, not controlling. We agree with appellant in this contention.

There was much confusion among the authorities as to just what manner of control was the deciding factor in this type of case until the Supreme Court decided Insurors Indemnity & Insurance Co. v. Pridgen, 148 Tex. 219, 223 S.W.2d 217, 219 (October 1949). This confusion is expressed by the court, as follows:

"The facts as above related are without substantial dispute in the record, but the same cannot be said of the legal results deducible from them."

In that case it is stated, over and over again, that the control, which is the decisive factor in this type case, is the control of the "machine", and not the control of the result of the work desired. For instance, it uses the following language:

"On the other hand the arrangement did not expressly provide that Shipyard was to have the right to do more than tell the dragline operator what particular jobs or pieces of work it wanted done, and, while this right obviously implied the further right to give the necessary specifications of each task, it did not, unless by pure implication, include the right to direct the operators in the details of how the machine was to be managed in order to accomplish the results. * * *

"If the servant is expected only to give results called for by the temporary employer and to use the instrumentality as the servant would expect his general employer would desire, the original service continues. * * *

"Hartford Accident & Indemnity Co. v. Addison, supra [5 Cir., 93 F.2d 627], supports the conclusion we have reached. Shannon v. Western Indemnity Company, Tex.Com.App., 257 S.W. 522, confirms the significance we have given to certain aspects of the evidence as indicating lack of control by Shipyard over the management of the dragline."

In the above case, the Supreme Court gives an example of one who rents a taxicab and driver for the day, with the full power to direct, in a reasonable way, where the driver should go, when he should stop, where he should turn, etc. Yet, it holds that the driver remains an employee of his general employer "in the absence of evidence that the customer is to control the details as to the management of the cab * * *". The Supreme Court, in this case, also gives considerable weight to the fact that if the employer (appellee, herein) was dissatisfied with the work of the employee (appellant, herein), all that he could do would be to complain to the general employer (Southwest Transfer, herein). The undisputed facts show in this case that the appellee, and none of its employees, had any direction over the appellant as to how he should operate this piece of machinery. They gave him signals as to how the beams that he was lifting should be lowered, raised, or moved, but they did not tell him how to operate his machine to accomplish that purpose. No one told him whether to pull this lever or that lever, or push this button or that button. All that they told him, and all that they could tell him, was what result they wanted accompished. If appellant was to be fired, he was to be fired by the general employer, Southwest Transfer, to whom he made a written report each night, and not by the appellee, Wilhelm Steel Construction Co., Inc. Appellant was in full charge and control of this expensive piece of machinery and, as stated by the Supreme Court in the above case, had appellee asked him to do some type of work that the machine was not adapted for, it would have been his duty to refuse to do same. He was paid by Southwest Transfer Company, and his compensation insurance was carried by said company. We here use the exact words used by the Supreme Court in the Pridgen case, supra:

"In the instant case, moreover, we have the undisputed testimony that all parties understood the lease to be on a 'fully operated' basis which in our view negatives the right of the lessee to dictate the manner—or in the final analysis even the subject—of the operation of the machine."

We therefore hold, under this record, that he remained in the employ of Southwest Transfer Company, and was not a loaned employee to appellee, Wilhelm Steel Construction Co., Inc., and we think the trial court erred when he held and found to the contrary. See also, Southern Underwriters v. Lloyds America, Tex.Civ.App. Beaumont 1939, 133 S.W.2d 151, (Dism.Jud.Cor.).

Wherefore, this case is reversed and re· manded for trial on the merits.