Ben M. POLANCO, Appellant,

v.

AUSTIN BRIDGE COMPANY, Appellee.

No. 5454.

Court of Civil Appeals of Texas.

El Paso.

July 26, 1961.

Warren Burnett, Odessa, for appellant.

Brown & Murray, Fort Worth, for appellee.

FRASER, Justice.

This is a suit for personal injuries sustained by appellant as the result of his having been struck by the boom of a dragline as it fell during lifting operations being performed in connection with the erection or installation of certain equipment in Borden County, Texas.

At the close of the evidence, the case was withdrawn from the jury by the trial judge, and judgment entered for defendant.

Appellant has briefed four points. The first two charge the court with error in holding, as a matter of law, that the dragline operator and one Deavers, superintendent of appellee, were the agents of Wynn Pipeline Service Company, or were loaned employees of said company at the time of the injury. The appellee was a general contractor on the job, and the Wynn Company was a sub-contractor who had leased the dragline in question from appellee for the purpose of raising a water pump a fraction of an inch or so, so that certain padding could be removed and the pump bolted in place. At the time of the accident, the appellant was not visible to the operator of the dragline; but, when the eye carrying the steel cable broke, appellant was injured.

We believe appellant's two points should be granted, because, of course, the agency depends on the same facts that determine whether or not Deavers and the operator of the dragline were loaned employees of the Wynn Company, for whom the injured man worked. We do not believe the evidence here justified the trial court in holding, as a matter of law, that Deavers and the operator were loaned employees. Deavers was an employee of long standing with the appellee, (twenty years). He testified that the dragline operator was a skilled employee and paid accordingly. The record shows that this dragline had been rented or hired on previous occasions by Wynn Company, the sub-contractor. According to Deaver's own testimony, he gave Rogers, the operator, the signals telling him to lift the pump, and explained

that the signal was given by rubbing his hands together, which meant "lift it easily". At the time the accident occurred, both Deavers and the operator were regular employees of appellee—Deavers as superintendent; and it seems to us that he was acting in that capacity when he was giving hand signals to the operator as to when and how to lift the machinery. Deavers was never on the Wynn payroll and never received a check from Mr. Wynn. It is clear that neither Wynn nor any servant of his gave any signals at the time the lift began. Also, Deavers, superintendent of appellee, had warned everybody to get back out of the way when the lift began. Further, the Wynn Company was billed for the use of the crane and the wages of Deaver and the operator, but neither Deavers not the operator were paid anything directly by the Wynn Company. Deavers further testified that he had the right to hire or fire whoever was operating the crane, or dragline; that he would not have permitted Mr. Wynn, or anyone else, to place a stranger or unskilled person in a position to operate this valuable equipment. So, in summation, we have the picture of appellee leasing or hiring this equipment and the two men, to the Wynn Company, the employer of appellant, which employer paid appellee for the use of the equipment and the time of the men; that at the time of the accident, Deavers, the superintendent of appellee, was present and gave hand signals to the crane operator, although Deavers himself did not make any effort, apparently, to operate the crane but, according to the record, acted only in a supervisory capacity, such as warning people to stand back and giving directions to the operator; and he testified, as stated above, that he would not have permitted an unskilled person to handle the crane, and would have fired anyone he thought incompetent. This, coupled with the fact that Wynn Company paid appellee, and not the servants of appellee, for their time leads us to the conclusion that this was not a "loaned operation", and that the equipment was under the actual control of appellee's employees.

■ This type of controversy has been litigated many times by the court, as evidenced by the following cases: Goodwin v. Wilhelm Steel Construction Co., Tex.Civ. App., 311 S.W.2d 510 (wr. ref.); Hilgenberg v. Elam, 145 Tex. 437, 198 S.W.2d 94; Insurors Indemnity & Insurance Co. v. Pridgen, Tex.Civ.App., 223 S.W.2d 217; Gibson v. Robert Lange Inc. et al., Tex.Civ. App., 310 S.W.2d 623; Rector v. Walden, Fulton & Payne, Tex.Civ.App., 276 S.W.2d 933. We do not deem it necessary to discuss these cases, as they have long been familiar to the Bar and judiciary. We do feel that the courts have established certain basic facts; and our interpretation of same, without quoting the language of the various opinions, is that the fundamental, or basic, test is whether the equipment and servants, in addition to being told what, where and when to perform a service, can and will be told how to perform this service, and are subject to orders regarding and regulating the use of the equipment. If, on the other hand, they are merely told what, where and when, but retain the responsibility of handling the equipment so as best to accomplish this purpose, and are ultimately responsible for the proper use and care of the equipment, then—in our opinion—they are not loaned employees, and remain the agents and employees of the equipment owners. We think this situation falls under that category on the basis of the evidence outlined above. Deavers was on hand to give signals and possibly hire or fire the operator. The operator was listening to him and, apparently, looking only to Deavers as to how to perform the task. We think, therefore, that the trial court erred in holding, as a matter of law, that Deavers and the operator were either the agents or loaned employees of Wynn Pipeline Service Company. These first two points are accordingly granted and sustained.

Appellant's third and fourth points allege that the trial court erred in holding that there was no evidence, or insufficient evidence, of negligence on the part of appellee's superintendent, Deavers, and the operator, and that the evidence did show that it was the result of an unavoidable accident, or there was no evidence or insufficient evidence to indicate that it was not the result of an unavoidable accident.

Again, we think the court erred in its rulings, and we think there was evidence here that the jury should have had the opportunity to pass upon. The plaintiff was injured when the boom fell. Appellee claims that it fell because an eye, to which a cable was attached, broke, and that it was a clean break, showing no earlier existence or suggestion of weakness that could have been found by inspection. Now in considering whether this matter should have been submitted to a jury, it must be remembered that Deavers, the superintendent, testified that he took the eye and the line that broke in to Dallas; and, so far as the record shows, that was the end of both. The witness A. D. Wynn, head of the Wynn Pipeline Service Company, testified that just preceding the time of the accident, he had a discussion with the appellee's superintendent as to whether lifting this pump would overload the crane. This witness said, "We discussed the crane and he said—I told him that the crane was inadequate." He further testified that Deavers said, in discussing the probability of the thing lifting the object, "Well you just leave that to old Herman. He will do it." This witness further quoted Deavers as saying that he would hold the boom in place with a winch truck, and "I will shower down on both of them at the same time and lift it." Deavers substantially denies this conversation. He also testified that he never told the operator how to operate the dragline, and that he had no skill or knowledge in that field. There is a conflict in the testimony of appellee's servant, Deavers, and Mr. Wynn. It is obvious that something caused this eye to break. Appellee says it was a clean break, but took it and the cable immediately off to Dallas. Wynn says that he thought the crane was overloaded. Appellee says it lifted the same item the day before. Appellee denies, through Deavers, having taken the extra precaution of using a winch truck and snubber lines to hold the boom down. Mr. Wynn says they did do these things, in his presence.

We think these matters, and the record in general, present a picture that should have been submitted to a jury to pass upon. We do not believe that the mere fact that an eye broke during use spells out "unavoidable accident." Something caused it to break. Was it from overloading, improper use, faulty manufacture, or what? This is a fact question. Because of this, and the other fact questions involved, we believe the trial court was in error in withdrawing the case from the jury on the matter of evidence, as presented by appellant's third and fourth points.

Appellant's points are, therefore, all sustained and granted, and the cause is reversed and remanded to the trial court for a new trial.