**Domingo R. CUELLAR, Appellant,**

v.

**LIBERTY MUTUAL INSURANCE COMPANY, Appellee.**

**No. 5887.**

Court of Civil Appeals of Texas.

El Paso.

Oct. 11, 1967.

Rehearing Denied Nov. 1, 1967.

Warren Burnett, Robert D. Pue, Odessa, for appellant.

Emil C. Rassman, John E. Gunter, Midland, for appellee.

## OPINION

CLAYTON, Justice.

This is a Workmen's Compensation case, appealed when the court granted appellee a judgment n. o. v. Appellant here, Domingo R. Cuellar, plaintiff below, had been an employee of Conner Construction Company, whose insurance carrier was the appellee here, for some ten years in various capacities, mainly working on pipeline construction. His work had not been continuous for Conner, but he had worked for about three days for the company before the accident involved in this case occurred on March 11, 1964. Conner was digging a ditch and installing a pipeline for T. & P. Coal and Oil Company on a lease in Ector County, Texas. The latter company hired E. L. Farmer Trucking Company to pick up some pipe and bring it to the location and "string" it along the ditch. The pipe arrived in three trucks of Farmer Company and one of the truck drivers asked Conner's foreman, A. A. Jones, for some men to help in "stringing" the pipe and Jones let the truck driver have two men, appellant Cuellar and another, and Jones went on about other business of the pipeline (the trucks were to be paid for during the time they remained on the job). When Cuellar was asked to tell the jury what happened when A. A. (Jones) sent him to help the truck driver, appellant answered:

> "A Yes, sir, I sure do it. The 11th of March, 1964, I worked with Jack Conner and Mr. A. A. sent me and Mr. Martinez to go unload the trailers on the pipeline and we go because he is our foreman, we have to do what he say and then we start to unload the first trailer and then we go to the second trailer and then it happened."

Cuellar received injuries when one of the pipes fell off the truck and hit him. (The truck driver was also injured by the pipe). He further testified:

> "Q Who told you and Mr. Martinez to go with the truck driver?
>
> A A. A.
>
> Q A. A. Jones?
>
> A Yes.

Q Who does he work for?

A Jack Connor.

Q What did he tell you to do?

A Help those truck drivers unload the trailers of pipe.

Q Had you ever done this before?

A Yes, sir, I got experience.

Q You had worked on pipelines a number of years?

A Yes, sir.

Q Did you know what to do?

A Yes, sir.

Q And when you got down there and got stopped and the truck driver had you take the chains and boomer off the truck?

A Yes, sir.

Q Then did he ever tell you anything else to do?

A No, sir.

Q Was there any reason for him to tell you what else to do?

A He don't told us anything to do, he just pulled the truck and this man stand there and shake the chain and we can't hold it, too many pipes."

Also:

"A He told us to take loose the chains and he never tell us anything more, so the driver, the guy in the cab start to pull and it was too much sand over there and the trailer start shaking and we can't hold it.

Q Were the guards taken off of the side of the truck?

A Yes, we call them shoes.

Q These are the things that help hold the pipe on?

A Yes.

Q And the truck driver told you to remove those?

A Yes."

After all the testimony the court submitted the case to the jury on special issues. The first issue was whether or not appellant was "the borrowed employee" of E. L. Farmer Trucking Company, accompanied by a definition of the term "borrowed employee". The jury answered "He was not the borrowed employee. Other issues were answered favorably to appellant, and appellee then filed its motion for judgment n. o. v., asserting that the jury's answer to Special Issue No. 1 was "contrary to the evidence, that there is no evidence or insufficient evidence" to support the jury's answer to this issue, that such was against the overwhelming preponderance of the evidence which "clearly shows that the plaintiff was in law a borrowed employee of and subject to the sole direction, supervision and control of E. L. Farmer Trucking Company at the time of the accident in question and judgment should therefore be entered in favor of the defendant, whose subscriber was Conner Construction Company and not E. L. Farmer Trucking Company." The court granted this motion, reciting:

"* * * and it further appearing to the Court, and the Court so finds, that a directed verdict in favor of the defendant would have been proper in this cause, and the Court is of the opinion and finds as a matter of law that under the evidence adduced at the trial the law is with the defendant because the plaintiff was, as a matter of law, a borrowed employee and subject to the direction, supervision and control of E. L. Farmer Trucking Company, and not subject to the control, supervision and direction of defendant's subscriber, Conner Construction Company, at the time of plaintiff's accident; therefore, said defendant's motion to render judgment notwithstanding the findings of the jury should be granted in favor of the defendant and the jury's

findings on the aforesaid Special Issue No. 1 should be disregarded by the Court, and the plaintiff is not entitled to recover herein."

Appeal was taken to this part of the judgment, which was presented as the sole point of error "since there was evidence from which the jury could find, as it did in fact find, that appellant was not the borrowed employee of E. L. Farmer Trucking Co."

Under this situation, as presented to us, we conceive our duty to be to examine all the evidence, and if we find any evidence of probative force to support the jury's verdict, the verdict will be sustained. As stated in the case of Burt v. Lochausen, 151 Tex. 289, 249 S.W.2d 194, 199 (1952):

> "Also, to sustain the action of the trial court in granting judgment non obstante veredicto, it must be determined that there is no evidence having probative force upon which the jury could have made the findings relied upon. Whiteman v. Harris, Tex.Civ.App., 123 S. W.2d 699, writ refused; Warren v. Schawe, Tex.Civ.App., 163 S.W.2d 415, writ refused."

See also Le Master v. Fort Worth Transit Co., 138 Tex. 512, 160 S.W.2d 224, 226 (1942), and Gulf, Colorado & Santa Fe Railway Company v. Deen, 158 Tex. 466, 312 S.W.2d 933, 937 (1958). That the question of employment is a fact issue upon which the jury must pass seems beyond question. In Southern Underwriters v. Willis, 110 S.W.2d 252, 254 (Tex.Civ.App., 1937; err. ref.), the court stated:

> " * * * The actual employer, in legal contemplation, * * *, was a question of fact, unless the testimony bearing on such issue was not only uncontradicted, but was also so definite and conclusive that reasonable minds could not differ as to its effect. When the ultimate fact to be ascertained is not shown by direct testimony, but is to be inferred in whole

or in part from other circumstances in evidence, a jury question is presented."

We might remark that most of the conflicting testimony arises from the difficulty appellant was undergoing, due to limited ability to speak English fluently, in answering leading questions of opposing counsel:

> "A You know it is pretty hard for me, sometimes I understand something, if I speak good English I not tell you no lies, but is pretty hard for me, my language is different, sir."

In addition to what has been previously quoted from the testimony, the Assistant to the President of Farmer Trucking Company testified:

> "Q Now, would you tell the jury what the truck drivers duties were after they go to the lease?
>
> A Well, ordinarily we will bring a load of pipe into the lease and where there is a pipeline contractor performing a job, laying the line, our trucks will come in to the line and at this point the drivers. are instructed to contact the pipeline company's spread foreman, job foreman, whatever you might call him, for instructions as to the unloading. We are not supplied with a map of the line and we know nothing whatsoever about how the contractor wants to lay this. All our truck drivers do is get to the line, look up the contractor's pipeline foreman and then follow his instructions.
>
> Q All right, sir, do your truck drivers at any time, when they get out there with a load of pipe such as happened on March 11th, do they at any time assume control or supervision of the unloading of the pipe?
>
> A When they work with a pipeline contractor at no time do they ever assume control.

Q Their responsibility then is to get to the location and then report to the foreman of the pipeline company?

A And follow his instructions from that point on."

And:

"Q * * * when the truck driver reports to the location under whose supervision is he then?

A He will then work for the pipeline contractors foreman.

Q Will he do whatever the pipeline foreman tells him?

A Well, within reason, he is instructed to follow his instructions.

Q As long as it does not damage his truck?

A That is right.

Q At any time does he assume control or supervision over any of the employees of the pipeline contractor?

A I would know of no reason that he would ever do that."

And further:

"Q Now, would you tell the jury whether or not Domingo Cuellar, the plaintiff in this case, was ever paid one nickel by E. L. Farmer Trucking Company?

A No, he was never paid by us.

Q Was he ever on the payroll as a borrowed employee?

A No."

The appellee insurance company paid the first insurance check. and the safety engineer or director of safety of the Conner Company told appellant, "Don't worry about a thing, your hospitalization and everything is taken care of, we are going to start your compensation and have your old job back for you," while at a time an investigation of the accident was in progress.

The appellant, on re-direct examination, testified:

"Q Mr. Myrick, the truck driver, did he have to tell you anything to do with the experience you had?

A. No.

Q Did he have the right to take you into town or fire you?

A No, sir.

Q Who were you working for?

A For A. A. for Jack Conner.

Q Mr. Jones could have fired you?

A Yes, sir.

Q Or he could have sent you to town?

A Yes, sir.

Q With the driver of the truck?

A Correct.

Q Did you ever receive any pay or anything from E. L. Farmer Trucking Company?

A No, sir.

Q Did you ever get a compensation check from E. L. Farmer Trucking Company insurance company?

A Not a penny, sir.

Q Did you get a check from the Liberty Mutual Insurance Company or Jack Conner's insurance company?

A One check of thirty-five dollars."

As we have said, there is testimony contradictory to this, but as a question of fact, the jury could determine the credibility of the witnesses and the weight to be given their testimony and could, on the basis of quoted testimony, properly arrive at their conclusion.

We feel that they did so and that therefore we are impelled to reverse and render the judgment of the court so as to affirm the finding of the jury in favor of appellant in answer to Special Issue No. 1 and remand the cause for judgment by the trial court on the other special issues involved.