**GULF, COLORADO AND SANTA FE RAILWAY COMPANY, Appellant,**

v.

**HARRY NEWTON, INC., Appellee.**

No. 16936.

Court of Civil Appeals of Texas.

Fort Worth.

June 14, 1968.

Rehearing Denied July 12, 1968.

Hudson, Keltner, Smith & Cunningham, and Joe Bruce Cunningham, Fort Worth, for appellant.

Jennings, Montgomery & Dies, Graham, Nelson, Sherrod, Carter & Oldham, and Eugene Sherrod, Jr., Wichita Falls, for appellee.

OPINION

MASSEY, Chief Justice.

When the verdict of the jury was received by the trial court it developed that if the plaintiff were entitled to a judgment it would be upon findings made in response to inquiry upon the matter of whether, as of the material time, plaintiff's long time employee had become the borrowed servant of the defendant. If he was a borrowed servant of the defendant and had completely departed from that master-servant relationship with plaintiff (in respect to the event with which we are concerned) when his negligence resulted in damage to plaintiff's property plaintiff would have a right to receive compensatory damages of the defendant under the doctrine of *respondeat superior*. On motion and notice the trial court disregarded certain issues and answers thereunto returned and, upon the verdict thus remaining, rendered a take nothing judgment in favor of the defendant.

Affirmed.

Defendant Harry Newton, Inc. was in the bridge construction and erection business. Ordinarily defendant used its own hoisting machine. On the occasion in question, when defendant was erecting a bridge over a highway—incident to highway construction activities—its own equipment was not available for use. The defendant contacted officials of Gulf, Colorado and Santa Fe Railway Company and arranged for them, in behalf of said plaintiff Railroad, to place a crane-hoist machine and operator on its jobsite. The consideration therefor, payable by defendant to the Railroad, was a daily amount for machine rental, plus the amount the Railroad paid as salary to its operator during the period of use.

The particular work to be performed requiring the use of the crane-hoist and its operator was to raise metal sections from

the ground-level above the level of the surface of the railroad bridge, to swing said sections around, and then to lower each into position (or approximate position) where the defendant's workmen could conveniently proceed with construction activity. The work began, and proceeded. The crane operator would lower the hook of the hoist (running down from the end of the crane) and employees of the defendant would fasten it to the article to be lifted and swung into position. Then a signal would be given to the crane operator and he would so operate his hoisting apparatus that it was lifted to the proper height, swung around to the proper point, and lowered into position.

Referring to jury findings which persist, and to evidence in the record, the following occurred: On the material occasion the crane operator had begun an operation—in that a metal section had (as result of his crane operations) been lifted free of the ground-level. Circumstances unrelated to the erection activity occasioned a stopping of, or pause in, the hoisting operations to that point. While such operations were so stopped employees of the defendant attempted to turn the metal section so that it would "change ends". Had the employees been successful in their attempt the metal section would have been in proper apposition and alignment as of the time it was to be lowered into position after it had been raised, swung around, and the lowering operation begun. It was found by defendant's employees that "changing ends" could not be effected because of the obstruction of a pillar supporting the bridge. Though such could have been accomplished if the entire hoisting machine were driven forward a few feet (possible since it was mobile and self-propelled) the crane operator independently conceived the idea of turning the crane out more toward what would have amounted to a right-angle. This he did, and upon so doing the physical effect upon the entire hoisting machine by the weight of the suspended section caused it to begin to

tip over as though to fall from the top of the bridge onto the roadway below. There was no signal by anyone which caused the crane operator to so turn the apparatus. Signals which had theretofore been given the operator had been by another employee of the Railroad. Somehow the load supported was released so that it fell to the ground. The effect of the release of the load was such that the crane flew upward, and the effect of this was that the entire hoisting machine flipped backward, then tumbled onto and into the top portion of the bridge structure. The damage done to the hoisting machine was $30,000.00. The Railroad sued the defendant to recover the amount of its damages on the theory of the negligence of the crane operator.

The general question is a subject of the text of 17 A.L.R.2d, 1388, Annotation: "Liability under respondeat superior doctrine for acts of operator furnished with leased machine or motor vehicle", and at p. 1442, III, "Lease of machine with operator", (a), "Hoisting apparatus". It is stated: "A single over-all comment, the validity of which may be tested by a cursory examination of this section and those following it, may be made at this time— that the task of a lessor of machinery who seeks to avoid legal responsibility for acts of an operator thereof, furnished with the machinery to one who has leased it, is an exceedingly difficult one. The burdens of the relationship of master and servant, once that relationship has been established, are not easily shifted from the original master to one to whom the servant has been provided in connection with the lease of machinery by the original master."

In the instant case we are of the opinion that the plaintiff Railroad, lessor of the machinery and employee furnished to operate it to the defendant lessee, has not as the "master" successfully shifted his portion of the master-servant relationship onto the shoulders of the defendant so that it was the "master" in lessor's place and stead and thus under *respondeat su-*

*perior* the only principal responsible for the negligent conduct of the servant (as an agent) in the operation of the machine. We are of the further opinion that the Railroad's evidence bearing thereupon did not suffice to raise an issue of fact and that operation of the rules of law compelled the trial court's judgment against it despite findings made by the jury in answer to special issues.

There was no evidence, express or implied, of sufficient probative force to raise an issue of fact: (a) that the operator consented to depart from the pre-existent relationship of master and servant between himself and the Railroad, releasing the Railroad's obligation to him presumably existent under such a relation; (b) that the Railroad consented that its operator—assigned to duties in connection with the hoisting machine—pass from under its right to control him as to anything done in connection with his operation of the machine; (c) that the defendant consented to accept the crane operator into any master-servant relationship with it, whereby it would become liable and responsible to the operator attendant to a master's obligations under that relation; (d) that the operator consented, in respect to the material act resulting in damage to the Railroad's property, not only to act for or under the control of defendant but to so submit to the direction of the defendant as to concede to it the right to control him and the acts undertaken by him.

There were three special issues, answers to which the Railroad contends control entry of judgment in the case. These issues and answers were disregarded on motion of the defendant. Judgment was entered upon the jury findings remaining.

The findings under the disregarded special issues were as follows: (1) crane operator was performing services within the usual scope of the defendant's business; (2) and at time of the accident was performing acts which were part of the work to be performed by the defendant;

and (3) at such time the defendant was directing and controlling the manner and the details of the work being done by the crane operator. The defendant objected to the court's charge and particularized its complaint that the inquiry of the aforementioned issues did not reach the matter of "right to direct and control the manner and details * * * in the actual operation of the crane itself, as distinguished from the general use of the crane" and that the issues did not include the "inquiry as to whether the crane operator was still the general employee of the plaintiff, or was the borrowed or the special employee of the defendant."

In the awareness of criticism of appellate courts relative to extended opinions where the question under consideration is whether there is "no evidence" to raise an issue of fact we see no necessity to lengthen this opinion. There has been a great deal written upon the law of the borrowed servant doctrine by our appellate courts. Therefore we perceive no good reason for outlining comparisons of evidence in this case with that to be found in others or to show tests applied thereto in arriving at our conclusion that there was no evidence raising the issue of borrowed servant. Facts in this case are similar, by analogy, to facts in those by which we believe the law to be settled.

Authoritative opinions upon which we have made our decisions include: Goodwin v. Wilhelm Steel Construction Co., 311 S.W.2d 510 (El Paso Civ.App., 1958, error refused); Producers Chemical Company v. McKay, 366 S.W.2d 220 (Tex. Sup., 1963); Insurors Indemnity & Insurance Co. v. Pridgen, 223 S.W.2d 217 (Tex. Sup., 1949); Polanco v. Austin Bridge Company, 348 S.W.2d 728 (El Paso Civ. App., 1961, no writ hist.); and the authorities referred to in Pangborn Corporation v. Jacobs, 368 S.W.2d 852, 858 (Fort Worth Civ.App., 1963, writ ref., n. r. e.).

We recognize the fact that among the cases holding that the issue of borrowed

servant was raised as a fact issue for jury determination are those advanced by the Railroad in support of its position, viz: Younger Bros. v. Moore, 135 S.W.2d 780 (El Paso Civ.App., 1939, writ dism. judgm. cor.); Pacific Employers Ins. Co. v. Liberty Mut. Ins. Co., 174 F.2d 1 (5th Cir., 1949, no writ hist.); Gibson v. Robert Lange, Inc., 310 S.W.2d 623 (Houston Civ. App., 1958, no writ hist.); and Cuellar v. Liberty Mutual Insurance Company, 420 S.W.2d 199 (El Paso Civ.App., 1967, writ ref., n. r. e.). Here, upon the same tests applicable and showing fact issues to have been existent in the cited cases, it is our conclusion that fact issues were not raised in the instant case.

Judgment is affirmed.